**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

Quisi Bryan,                                        Case No. 1:11 CV 00060

            Petitioner,                             ORDER

      v.

David Bobby, Warden,

            Respondent.


        This is a capital habeas corpus case. Pending are Petitioner Quisi Bryan's Motion to Expand

the Record Pursuant to Habeas Rule 7 (Doc.  64) and Motion to Conduct Discovery Pursuant to

Habeas Rule 6. (Doc. 67).  Respondent David Bobby filed a Brief in Opposition (Doc. 68) and

Petitioner filed a Reply Brief (Doc. 69).  For the following reasons, I deny Petitioner's Motion to

Expand the Record (Doc. 64)  without prejudice.  I deny Petitioner's Motion for Discovery (Doc.

67): 1)  without prejudice with respect to Claim 8; and 2) with prejudice with respect to Claims 9

and 14.

                                      **Background**

        On July 5, 2000, a Cuyahoga County Grand Jury issued a fourteen count indictment against

Petitioner in connection with the shooting death of Cleveland Police Officer Wayne Leon.  The

indictment charged Bryan with: 1) three counts of aggravated murder in violation of Ohio Rev. Code

§ 2903.01 (Counts 1 - 3);[1] 2) two counts of attempted murder in violation of Ohio Rev. Code §

_____

        [1] Count 1 charged Bryan with purposely causing the death of a law enforcement officer
whom the defendant knew to be engaged in his duties.  Count 2 charged Bryan with purposely
causing the death of a law enforcement officer and with the specific purpose to do so.  Count 3

                                          1

2923.02/2903.02 (Counts 4 and 5); 3) three counts of felonious assault in violation of Ohio Rev. Code § 2903.11 (Counts 6-8); 4) three counts of improperly discharging a firearm in violation of Ohio Rev. Code § 2923.161 (Counts 9- 11); 5) one count of carrying a concealed weapon in violation of Ohio Rev. Code § 2923.12 (Count 12); 6) one count of having a weapon under disability in violation of Ohio Rev. Code § 2923.13 (Count 13); and 7) one count of tampering with evidence in violation of Ohio Rev. Code § 2921.12 (Count 14). (Doc. 29 at 21- 34).  Each of the three aggravated murder counts (Counts 1 - 3) contained identical death penalty specifications.[2]  (Doc. 29 at 21- 24).  In addition, firearm specifications were included in Counts 1 through 11.  (Doc. 29 at 21 - 31).  Bryan pled not guilty to all charges on July 7, 2000. (Doc. 29 at 36).

Prior to trial, the trial court dismissed Counts 6 through 10 and renumbered the remaining counts.  (Doc. 30 at 218).   Jury selection began on October 23, 2000 and trial began on the nine remaining counts on October 27, 2000.  (Doc. 37 at p. 8).  On November 7, 2000, the jury found Bryan guilty of all charges, except Count 3 (aggravated murder of Officer Leon with prior calculation and design), and the original Count 11 (later renumbered Count 6) (improperly discharging a firearm).

The penalty phase of the trial began on November 9, 2000, during which Bryan presented the testimony of his mother and gave an unsworn statement expressing remorse.  On unopposed motion from the State, the trial court merged the specification for killing an officer engaged in his

---

charged Bryan with the aggravated murder of Officer Leon with prior calculation and design.

[2] Specifically, the indictment included death penalty specifications for murder: 1) of a police officer engaged in his duties; 2) for the purpose of killing a police officer; 3) to escape detection, apprehension, trial, or punishment for another offense; and 4) as a "course of conduct" in killing or attempting to kill two or more people. (Doc. 29 at 21- 23).

duties with the specification for murder for the purpose of killing an officer. (Doc. 30 at 222).  After deliberations, the jury recommended a sentence of death. (Doc. 30 at 222). On November 16, 2000, the trial court adopted the jury's recommendation and imposed a death sentence. (Doc. 30 at 223).

Bryan filed a timely appeal to the Ohio Supreme Court, raising nineteen propositions of law. The Court affirmed his conviction and sentence on March 17, 2004. *State v. Bryan*, 101 Ohio St.3d 272 (2004).  Bryan thereafter filed a Motion for Reconsideration, which was denied on May 12, 2004. *State v. Bryan*, 102 Ohio St.3d 1449 (2004).  Several months later, Bryan filed an Application to Reopen His Appeal under S.Ct. Prac. R. XI(6), which the Court denied on October 27, 2004 as untimely.  *State v. Bryan*, 103 Ohio St.3d 1490 (2004).

Meanwhile, on December 28, 2001, Bryan filed a Petition for Post-Conviction Relief in the state trial court pursuant to Ohio Rev. Code § 2953.21, raising thirteen grounds for relief. The trial court dismissed Bryan's petition without a hearing on November 18, 2005.  *State v. Bryan*, Case No. CR393660 (Cuyahoga Cty. Ct. Cmn. Pl.)(Nov. 18, 2005) (Doc. 37 at 7 - 20).  On appeal, the state appellate court dismissed Bryan's appeal for lack of a final appealable order, finding the trial court failed to rule on two grounds raised in Bryan's petition. *State v. Bryan*, 2006 WL 2773646 (Ohio App. 8th Dist. Sept. 28, 2006).

The trial court thereafter issued additional Findings of Fact and Conclusions of Law, dismissing the two grounds for relief it had neglected to address previously.  *State v. Bryan*, Case No. CR 393660 (Cuyahoga County Ct. Cmn. Pl.) (Feb. 24, 2009) (Doc. 37 at 21 - 24).  Bryan appealed and, on May 13, 2010, the state appellate court affirmed the trial court's dismissal of his Petition for Post-Conviction Relief.  *State v. Bryan*, 2010 WL 1918606 (Ohio App. 8th Dist. May 13, 2010).  Bryan thereafter appealed to the Ohio Supreme Court, which declined to hear the case

3

and dismissed the appeal as not involving any substantial constitutional question on December 15, 2010.  *State v. Bryan*, 127 Ohio St.3d 1461 (2010).

Bryan filed his Petition for Writ of Habeas Corpus in this court on August 15, 2011, raising sixteen grounds for relief.  (Doc. 18).  Respondent filed his Return on April 20, 2012 (Doc. 59), Bryan filed his Traverse on August 3, 2012 (Doc. 63), and Respondent filed a Sur-Reply on August 17, 2012 (Doc. 65).

Petitioner thereafter filed his pending Motion to Expand the Record Pursuant to Habeas Rule 7 (Doc. 64) and Motion to Conduct Discovery Pursuant to Habeas Rule 6 (Doc. 67).  Respondent filed a Brief in Opposition on September 27, 2012 (Doc. 68) and Bryan filed a Reply on October 5, 2012 (Doc. 69).  It is these Motions that are currently before the Court.

## Discussion

### Motion for Leave to Conduct Discovery

In his Motion for Leave to Conduct Discovery, Bryan seeks permission to conduct discovery as to his  claims of: 1) ineffective assistance of counsel (IAC) during the penalty phase of the trial based on trial counsel's alleged failure to present any substantive mitigation material on Bryan's behalf (Claim 8); 2) IAC during the guilt phase of the trial based on counsel's  failure to request and obtain a videotape recorded by a video camera attached to the dashboard Officer Leon's patrol car (Claim 9); and 3) failure by the Ohio Supreme Court to conduct an appropriate proportionality review of Bryan's death sentence (Claim 14).   (Doc. 67).

A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course. *Bracy v. Gramley*, 520 U.S. 899, 904 (1997).  Instead, Rule 6 of the Rules Governing § 2254 Cases in the United States District Courts govern habeas discovery:

4

> A party shall be entitled to invoke the processes of discovery available under the Federal Rules of Civil Procedure if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise.

*See* Rule 6(a) of the Rules Governing § 2254 Cases in the United States District Courts.

Under this Rule's "good cause" standard, a federal court should grant leave to conduct discovery in a habeas proceeding "only where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." *Bracy*, *supra*, 520 U.S. at 908-09 (quoting *Harris v. Nelson*, 394 U.S. 286, 300 (1969)). The burden of demonstrating the materiality of the information requested is on the moving party. *Williams v. Bagley*, 380 F.3d 932, 974 (6th Cir. 2004). Although a petitioner need not show that discovery would unquestionably lead to relief, "vague and conclusory assertions are not sufficient under Rule 6 and a petitioner may not embark on a fishing expedition intended to develop claims for which there is no factual basis." *Payne v. Bell*, 89 F.Supp.2d 967, 970 (W.D. Tenn. 2000); *see also Williams*, *supra*, 380 F.3d at 974.

As a result of the Supreme Court's decision in *Cullen v. Pinholster*, — U.S. —, 131 S.Ct. 1388 (2011), considerable doubt exists as to the availability and extent  of discovery under Habeas Rule 6 .  In that case, the Court considered whether review under 28 U.S.C. § 2254(d)(1) permits the consideration of evidence introduced in an evidentiary hearing before the federal habeas court.

The  lower  federal  courts  had  held,  based  on  evidence  developed  during  the  habeas proceedings, that a California court decision rejecting Pinholster's IAC claim was contrary to or involved an unreasonable application of clearly established federal law  warranting habeas relief. The Supreme Court reversed, holding that "review under § 2254(d)(1) is limited to the record that

was before the state court that adjudicated the claim on the merits."  *Id.* at —, 131 S.Ct. at 1398.

Noting that "review under §2254(d)(1) focuses on what a state court knew and did," the Court

remarked that "[i]t would be strange to ask federal courts to analyze whether a state court's

adjudication resulted in a decision that unreasonably applied federal law to facts not before the state

court."  *Id.* at ___, 131 S.Ct. at 1399.  "[H]olding that evidence introduced in federal court has no

bearing on § 2254(d)(1) review," the Supreme Court made clear that, "[i]f a claim has been

adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation

of §2254(d)(1) on the record that was before the state court."  *Id.* at ___, 131 S.Ct. at 1400.

By its own terms, however, *Pinholster*'s requirement that a federal habeas court limit its

review to the state court record applies only to claims that have been "adjudicated on the merits" by

the state courts.  Accordingly, I first analyze each of the claims for which Bryan seeks discovery to

determine whether a state court has adjudicated that claim on the merits.  If so, I will then consider

the extent to which *Pinholster* impacts the availability of discovery with respect to that claim.

### 1. IAC During Mitigation (Claim 8)

In his Eighth Ground for Relief, Bryan claims trial counsel were constitutionally ineffective

during the penalty phase of the trial because they "unreasonably decided to forego the presentation

of any substantive mitigating evidence, leaving the jury with no alternative but to impose a sentence

of death." (Doc. 18 at 108).  Specifically, Bryan asserts that, at the beginning of the mitigation

hearing, trial counsel informed the court that they had compiled "close to half a dozen large-size,

three-ring binders full of mitigation materials" but had decided to use only three pages of those

materials in mitigation because "the remaining portions of the materials would not be beneficial to

our client." (Doc. 58, Trans. Vol. 7, at pp. 3215-3220).  Rather than introducing any of this other

evidence in mitigation, defense counsel presented only the testimony of Bryan's mother Cassandra Brown and Bryan's unsworn statement.  Petitioner asserts this mitigation defense was woefully inadequate, noting the combined testimony of Cassandra and Quisi Bryan covers only thirteen and a half pages of transcript.  (Tr. Vol. 7 at 3201-3214).

Bryan further claims that, during state post-conviction proceedings, his counsel obtained a "plethora" of mitigating evidence that would have formed a substantial basis for a compelling mitigation defense, including information about Bryan's childhood and upbringing, drug and alcohol dependency, history of head injuries, spirituality, good adjustment and behavior while incarcerated, and successful work experience with the Community Re-Entry Program.  (Doc. 67 at 12-13).  Bryan claims he attempted to factually develop these claims during post-conviction proceedings but the trial court denied his requests.  (Doc. 33 at pp. 79-97; Doc. 35 at pp. 99-111; Doc. 36 at pp. 5-18).

Bryan now seeks permission to depose trial counsel Jeffrey Saffold and production of the binders referenced in the mitigation hearing to understand better why defense counsel decided to forego presenting any of this information at mitigation.[3]  Bryan claims this discovery is highly relevant to both the deficient performance and prejudice prongs of his claim of IAC during the mitigation phase.  He further argues that he attempted to obtain discovery on this specific issue during state post-conviction proceedings, but the state courts unreasonably denied him the opportunity to do so.

Respondent argues this claim was "adjudicated on the merits" by the Ohio Supreme Court and, therefore, this Court's review is limited under *Pinholster* to the state-court record.  Because

---

[3] Petitioner claims habeas counsel have attempted to contact Mr. Saffold and secure access to the binders, but their efforts have been unsuccessful.  (Doc. 67 at 16).

*Pinholster* bars this Court from considering any evidence that might be adduced during these federal habeas proceedings, Respondent maintains allowing discovery on this claim would be futile. Respondent also argues that, even aside from the *Pinholster* issues, Bryan has failed to establish "good cause" for discovery under Habeas Rule 6.  Respondent argues discovery is unnecessary in light of the fact that defense counsel specifically explained to the state trial court (on the record and in *ex parte* proceedings) that they had carefully considered the mitigating information in the binders and concluded that introduction of such information would not be beneficial to their client. (Doc. 58 at 225 - 231).  Finally, Respondent maintains Bryan must meet the "due diligence" requirement of 28 U.S.C. § 2254(e)(2)[4] to conduct discovery on this claim and that he is unable to satisfy this demanding standard.

In response, Bryan argues Respondent's reading of *Pinholster* is overly broad.  He maintains *Pinholster* "did not overrule, amend, or otherwise abrogate Habeas Rule 6" and states there is nothing in that decision to suggest discovery in federal habeas proceedings is barred under all circumstances.  Moreover, Bryan argues *Pinholster* is factually distinguishable from the instant case. He argues that the petitioner in *Pinholster* "never claimed an inability to discover or present any facts in his state post-conviction proceeding" and "[t]here is nothing in the record indicating that during . . . post-conviction review the state courts denied Pinholster the necessary funding for

---

[4] Section 2254(e)(2) provides "[i]f the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on that claim unless the applicant shows that– (A) the claim relies on – (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was presently unavailable; or (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact-finder would have found the applicant guilty of the underlying offense."

experts or discovery."  (Doc. 69 at 8; Doc. 67 at 8).

By contrast, Bryan, claims he diligently attempted to obtain discovery regarding each of the claims but the state courts repeatedly denied him the opportunity to develop his claims, particularly during the post-conviction review process.  In light of these circumstances, he maintains applying *Pinholster* to bar discovery "would effectively create the untenable situation in which habeas courts would be mandated to give AEDPA deference to all state decisions made on the merits, even those that were a result of state procedures that were fundamentally unfair and violated due process by failing to provide a petitioner with an avenue for fact development." (Doc. 69 at 9).

Significantly, Bryan does not argue that the Ohio courts failed to adjudicate the IAC during mitigation sub-claim on the merits.  Indeed, the record shows the Ohio Supreme Court did so:

> In proposition of law XIII, Bryan argues ineffective assistance of counsel during the penalty phase because counsel failed to present 'viable' mitigating evidence.  During the penalty phase, the defense presented Bryan's unsworn statement and his mother's testimony.
>
> The presentation of mitigating evidence is a matter of trial strategy. *State v. Keith* (1997), 79 Ohio St.3d 514, 530, 684 N.E.2d 47.  Moreover, 'strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.' *Wiggins v. Smith* (2003), 539 U.S. 510, 123 S.Ct. 2527, 2535, 156 L.Ed.2d 471, quoting *Strickland v. Washington*, 466 U.S. at 690-91, 104 S.Ct. 2052, 80 L.Ed.2d 674.
>
> Here, the defense employed a mitigation specialist, a psychologist, and an investigator.  Prior to the penalty-phase proceedings, the defense counsel informed the trial court that the mitigation specialist prepared 'voluminous records relative to mitigation' and that the defense psychologist spent 15 to 30 hours interviewing Bryan.  The defense counsel carefully reviewed this information, and after discussing it with Bryan, decided that 'it was in our client's best interest' not to introduce this evidence. The defense counsel made a strategic trial decision, which cannot be the basis for an ineffective assistance claim. *See State v. Mason*, 82 Ohio St.3d at 169, 694 N.E. 2d at 932.
>
> Finally, resolving this issue in Bryan's favor would require speculation.

9

> Nothing in the record indicates what testimony the defense experts would
> have presented as no proffer has been made.

*Bryan*, *supra,* 101 Ohio St.3d at 300- 301.

The record shows Bryan also raised IAC during the mitigation phase claims during post-conviction, relying on evidence *de hors* the record to prove that counsel were ineffective for failing to present substantive mitigating evidence regarding his childhood and upbringing, substance abuse, head injuries, spirituality, good adjustment and behavior while incarcerated, and successful work experience. (Doc. 32 at pp. 29-173; Doc. 33 at pp. 1-62, 63- 78, 99-131; Doc. 34 at pp. 1-155; Doc. 35 at pp. 1- 34). Both the state trial and appellate courts addressed and rejected these claims. *State v. Bryan*, Case No. CR-393600 (Cuyahoga Cty Ct. Cmn. Pl.) (11/17/05, 2/24/09) (Doc. 37 at pp. 7-25), *aff'd,* , 2010 WL 1918606 at * 9 - 11 (Ohio App. 8th Dist. May 13, 2010).

Based on the above, I assume for purposes of this ruling that the IAC sub-claim at issue was "adjudicated on the merits" by the state courts and § 2254(d) controls my review. I must, therefore, consider whether *Pinholster* bars Bryan from conducting federal habeas discovery as to this claim. Unfortunately, there is no clear guidance from either the Supreme Court or the Sixth Circuit about this issue. Bryan correctly notes that *Pinholster* references neither Habeas Rule 6 nor *Bracy v. Gramley*, 520 U.S. 899, 904 (1997), nor does it otherwise directly address the issue of habeas discovery. Moreover, while the Sixth Circuit has relied on *Pinholster* to affirm the denial of federal evidentiary hearings with respect to claims that have been adjudicated on the merits,[5] it has not yet

---

[5] *See e.g. Bourne v. Curtin*, 2012 WL 75334 (6th Cir. Jan. 11, 2012) (finding petitioner was not entitled to an evidentiary hearing because the state courts had adjudicated his claim on the merits and, under *Pinholster,* petitioner was "stuck with 'the record that was before the state court'"); *Jackson v. Lafler*, 2011 WL 6382099 at * 4 (6th Cir. Dec. 21, 2011) ("As we have already explained, the state court decided this claim on the merits. Under AEDPA, we are limited to the state court record, and Jackson is not entitled to an evidentiary hearing"); *Marks v.*

squarely addressed the specific issue of whether or to what extent *Pinholster* impacts the availability of discovery under Habeas Rule 6.

The Sixth Circuit has also thus far declined to consider whether there is an exception to *Pinholster* when a habeas petitioner claims the state courts unreasonably refused to allow further factual development.  In *Daniel v. Curtin*, 2012 WL 3667993 (6th Cir.), the court  recognized that Justice Sotomayor's dissenting opinion in *Pinholster* assumed  "'the majority [did] not intend to suggest that review is limited to the state-court record when a petitioner's inability to develop the facts supporting his claim was the fault of the state court itself.'" *Id.*, 2012 WL 3667993 at * 5 (quoting *Pinholster*, ___ U.S. at ___, 131 S.Ct. at 1417 n5) (Sotomayor, J., dissenting).  While the Sixth Circuit noted that "the [*Pinholster*] majority seemed to agree with this proposition, at least in the abstract," it declined to consider the "existence or scope" of such an exception since petitioner in that case did not expressly raise the argument.  *Id.*

On several occasions, however, the Sixth Circuit has implicitly rejected arguments that *Pinholster* is inapplicable because of a  state court's  refusal to allow discovery or expert assistance. For example, in *Strouth v. Colson*, 680 F.3d 596, 603 (6th Cir.), the court  relied on *Pinholster* to find that petitioner was not permitted to expand the habeas record to include new evidence of mental illness despite the fact the state court denied funding for expert testimony during post-conviction proceedings.  Similarly, in *Fears v. Bagley*, 2012 WL 516169 (6tth Cir.), the Sixth Circuit refused to consider any evidence introduced at a federal evidentiary hearing despite the fact petitioner claimed he was denied the opportunity to introduce much of the same evidence during state

---

*Davis*, 2012 WL 5382897 at *3 (6th Cir. Nov. 2, 2012) ("When, as here, the state court decides a claim on its merits, our review is limited to the state court record. . . Since Marks's claim was adjudicated on the merits, no hearing was necessary"),

collateral proceedings.  In that case, the court found that *Pinholster* was applicable  because petitioner had  failed to assert any "clearly established federal law indicating that his collateral review was defective." *Id.* at * 8.  *see also Bowling v. Haeberlin*, 2012 WL 4498647 at * 88 (E.D. Ky. 2012) (denying petitioner's request for discovery with regard  to claims that had been adjudicated on the merits, despite the fact the state court had denied funding for an expert witness, because petitioner failed to cite any Supreme Court decisions suggesting his state post-conviction proceedings were constitutionally defective).

Bryan similarly fails to cite any clearly established federal law indicating Ohio's post-conviction review process is constitutionally defective.  Nor does he cite any federal case law, from either this Circuit or otherwise, to support his argument that *Pinholster* does not apply where the state courts refused to allow discovery or expert assistance during collateral review.  In the absence of any such authority, I decline to find that *Pinholster* does not apply to Bryan's IAC during the mitigation phase claim on the ground  the state courts refused his requests for discovery during post-conviction proceedings.

That being said, I am not convinced that *Pinholster* entirely forecloses the possibility that new evidence may become relevant to my determination of a petitioner's claim. As Justice Breyer explained in his concurring opinion:

> An offender who believes he is entitled to habeas relief must first present a claim (including his evidence) to the state courts. If the state courts reject the claim, then a federal habeas court may review that rejection on the basis of the materials considered by the state court. If the federal habeas court finds that the state-court decision fails [2254] (d)'s test (or if (d) does not apply), then an (e) hearing may be needed.
>
> For example, if the state-court rejection assumed the habeas petitioner's facts (deciding that, even if those facts were true, federal law was not violated), then (after finding the state court wrong on a (d) ground), an (e) hearing might be

12

needed to determine whether the facts alleged were indeed true.  Or, if the state-court rejection rested on a state ground, which a federal habeas court found inadequate, then an (e) hearing might be needed to consider the petitioner's (now unblocked) substantive federal claim.  Or if the state-court rejection rested on only one of several related federal grounds (e.g. that counsel's assistance was not "inadequate"), then, if the federal court found that the state court's decision in respect to the ground it decided violated (d), an (e) hearing might be needed to consider other related parts of the whole constitutional claim (e.g. whether the counsel's "inadequate" assistance was also prejudicial).  There may be other situations in which an (e) hearing is needed as well.

*Pinholster*, ___ U.S. at ___, 131 S.Ct. at 1412 (Breyer, J. concurring).

Indeed, since *Pinholster* was decided, several district courts have found these very circumstances present and considered new evidence (or permitted an evidentiary hearing to proceed) to resolve constitutional claims where they had determined the state court acted unreasonably in resolving those claims under § 2254(d).  *See e.g. Skipwith v. McNeil*, 2011 WL 1598829 (S.D. Fla. April 28, 2011) (holding that because § 2254(d)(2) was satisfied, it could consider new evidence adduced at evidentiary hearing); *Fitzgerald v. Workman*, 2011 WL 3793644 (N.D. Ok. Aug. 25, 2011) (where state court unreasonably applied federal law under § 2254(d)(2), "the Court reviews these claims *de novo*, [and] the AEDPA and the *Pinholster* and *Richter* cases do not apply").

Moreover, other district courts (including several within this Circuit) have acknowledged that "if after review solely on the state court evidence, it appears the state court contravened or unreasonably applied clearly established federal law, the federal court may then consider additional evidence to determine whether habeas relief should be granted."  *Caudill v. Conover*, 2012 WL 1673262 at * 9 (E.D. Ky. May 14, 2012), *see also Williams v. Houk,* 2012 WL 6607008 at * 5 (N.D. Ohio Dec. 18, 2012) (Oliver, C.J); *Lynch v. Hudson*, 2011 WL 4537890 at * 5 (S.D. Ohio Sept. 28, 2011) (Frost, J.) (finding that if the petitioner was able to demonstrate based on the state court record

alone that § 2254(d)(1) was satisfied, "the Court allows for the possibility that it could then consider [the new evidence] in making the determination whether to grant habeas relief"); *Williams v. Mitchell*, 2011 WL 5118469 at * 2 (N.D. Ohio Oct. 27, 2011) (Nugent, J.) (denies evidentiary hearing, but notes on motion for reconsideration that "[t]his Court agrees with Petitioner that *Pinholster* does not prevent habeas courts from considering evidence presented at an evidentiary hearing once it has determined that the petitioner's claim satisfies AEDPA's Section 2254(d)"); *Gillespie v. Timmerman-Cooper*, 2011 WL 2224487 (S.D. Ohio June 8, 2011) (Merz, MJ).

I fine this reasoning persuasive. Thus, if I decide, based solely on the state court record, that the state court decisions regarding Bryan's IAC during the mitigation phase claim contravene or unreasonably apply clearly established federal law or involve an unreasonable determination of the facts pursuant to § 2254(d)(1) or (2), this Court may then consider additional evidence to determine whether federal habeas relief should be granted. I have  not yet made this threshold determination under § 2254(d)(1) and/or (2), however, and am not inclined to do so in the context of deciding Bryan's discovery motion. Should I ultimately determine that the state court decisions regarding this claim unreasonably apply clearly established federal law or involve an unreasonable determination of the facts pursuant to § 2254(d), then I will consider whether additional factual development is necessary to determine if Bryan is entitled to habeas relief.  Accordingly, I deny Bryan's request to conduct discovery on this IAC during the mitigation phase sub-claim without prejudice.

### 2. IAC during Guilt Phase (Claim 9)

In his Ninth Ground for Relief, Bryan claims trial counsel were ineffective during the guilt phase of the trial when they failed to request and obtain a recording from a dashboard video camera attached to Officer Leon's patrol car.  During the State's case-in-chief, Cleveland Police Detective

14

Michael O'Malley testified that a video camera had been located on the dashboard of Officer Leon's patrol car which would "possibly" have been in a position to capture the shooting incident in question (hereinafter DashCam recording). (Doc. 57 at p. 369).  Detective O'Malley explained the videotape had been removed from the camera and examined, but "the camera was inoperative and, in fact, . . . there was nothing on the videotape" of evidentiary value. (Doc. 57 at p. 369).  Defense counsel did not object to this testimony or move the trial court to either allow them to view the tape and video camera themselves or submit the tape to a "specialist in video equipment to determine whether anything could be done to enhance or otherwise render the videotape capable of being viewed." (Doc. 18 at p. 127).  The record reflects the DashCam recording was introduced at the time of trial as State's Exhibit 147, but neither played nor admitted into evidence. (Doc. 57 at pp. 369-371, 413).

Bryan argues defense counsel's failure to obtain the videotape and dashboard camera from Officer Leon's patrol car was constitutionally deficient because the tape could have supported the defense's theory that Bryan had not intended to shoot Officer Leon. Bryan asserts he repeatedly attempted to obtain discovery on this issue during post-conviction proceedings but the state trial court denied his requests. (Doc. 63 at p. 163, 170; Doc. 35 at p. 109; Doc. 36 at pp.15-16).  He claims "[t]he significance of the videotape cannot be overstated as it lies at the very heart of Mr. Bryan's defense" and that "without access to the videotape there was/is no way to demonstrate the prejudice of counsel's failure to seek out and secure it for review." (Doc. 67 at p. 15; Doc. 63 at p.163).

Respondent maintains Bryan's request for discovery of the DashCam recording is "purely speculative" and that it is "settled" that nothing of evidentiary value is on the recording. (Doc. 68

at p. 16).  He asserts this evidence was in existence at the time of trial and that "issues of ineffective assistance of counsel (in both the guilt and penalty phases) . . . .were upheld in all state court proceedings." (Doc. 68 at p. 16).  Citing *Pinholster*, Respondent claims this Court is limited in its review to the state-court record.

I note, however, that Respondent claims in his Return that this particular IAC sub-claim is unexhausted because Bryan failed to raise it on either direct appeal or during post-conviction proceedings. (Doc. 59 at p. 113).  Respondent further argues in his Return that Bryan failed to raise this claim in a timely Application to Reopen his appeal and "it is improbable that any good cause can be found at this late date for the filing of the application now." (Doc. 59 at p. 114).  Thus, Respondent maintains in his Return, this claim is procedurally defaulted.

On review of the state court record, I find Bryan failed to fairly present this constitutional claim to the state courts on direct appeal.  Moreover, while Bryan did seek *discovery* of the DashCam recording during post-conviction, he did not raise in those proceedings a constitutional IAC claim based on trial counsel's failure to request and obtain the video tape and camera at issue.[6] However, contrary to Respondent's representation in his Return,  Bryan raised this claim in his Application to Reopen his direct appeal which he filed in the Ohio Supreme Court pursuant to S.Ct.Prac.R. XI, § 5.[7]  (Doc. 31 at pp. 456, 480).  Specifically, in Proposition of Law 14, Bryan

---

[6] Bryan acknowledges as much in his Traverse, stating that "[i]n seeking discovery, Mr. Bryan asked for thirty days to amend his petition with evidence obtained through the discovery process.  Without obtaining information he should have received through post-conviction discovery, Mr. Bryan was not able to put forth a claim based on the failure of counsel to obtain the video tape." (Doc. 63 at p. 170).

[7] Because Bryan's direct appeal was to the Ohio Supreme Court only, he filed his application to re-open  in that court pursuant to S.Ct. Prac.R. XI, § 5, rather than in the state appellate court pursuant to Ohio App.R. 26(B).

16

expressly argued that he "received the ineffective assistance of counsel who failed to obtain and examine a videotape recording device mounted in the deceased's patrol car." (Doc. 31 at pp. 456, 480).  The Ohio Supreme Court denied Bryan's Application on October 27, 2004 on the grounds that it had not been filed within the ninety day filing deadline. (Doc. 31 at p. 488).  Bryan thereafter filed a Motion for Reconsideration,[8] which the Ohio Supreme Court ordered stricken from the record on November 16, 2004. (Doc. 31 at pp. 497- 502; Doc. 31 at p. 503).

I find Bryan's IAC claim based on trial counsel's failure to obtain the DashCam recording was not "adjudicated on the merits" by  the state courts and, therefore, *Pinholster* is inapplicable. The question then becomes whether Bryan has demonstrated "good cause" to obtain this discovery pursuant to Habeas Rule 6 and *Bracy v. Gramley*, 520 U.S. 899 (1997).

Respondent argues generally that "good cause" does not exist, and discovery should not be permitted, with respect to a procedurally defaulted claim. (Doc. 68 at p. 20).  The parties strenuously dispute the question of whether this claim is procedurally defaulted.  Bryan argues at length in his Traverse that the instant claim is not procedurally defaulted because Ohio's Application to Reopen scheme is not an "independent and adequate" state remedy under *Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986). (Doc. 63 at pp. 169-171, 173-192).  He further argues that, even if I were to find the claim procedurally defaulted, the deficient performance of his post-conviction counsel constitutes cause to excuse the default under the United States Supreme Court's recent decision in *Martinez v.*

---

[8] Bryan sought reconsideration on the grounds that over half of the ninety day filing period had elapsed before the Ohio Supreme Court appointed him counsel and that, despite being faced with a "massive" trial record, counsel filed his Application to Reopen within 90 days of appointment. (Doc. 31 at pp. 497- 502).

*Ryan*, ___ U.S. ___, 132 S.Ct. 1309, 1315 (2012).[9]  (Doc. 63 at p. 169).

In his Sur-Reply to the Traverse, Respondent maintains *Martinez* is not applicable for a variety of reasons, citing as support the Fifth Circuit's decision in *Ibarra v. Thaler*, 687 F.3d 222 (5th Cir. 2012). (Doc. 65 at pp. 19-21).  In response, Bryan filed a "Notice of Supplemental Authority" in which he points out that a certiorari petition is pending in *Ibarra*.  *Balentine v. Thaler*, Case No. 12-5906 (U.S. Sup. Ct).  Bryan argues that "[b]ecause the Supreme Court is preparing to address the *Ibarra* holding, which the Warden asserts is persuasive authority here, this Court should await the Supreme Court's ruling in *Balentine* before considering it." (Doc. 66 at 3).

 I need not decide, at this time, whether  Bryan's IAC claim relating to the DashCam recording is procedurally defaulted or, if so, whether there is cause and prejudice to excuse the default.  For purposes of resolving the instant discovery motion, I will consider only whether Bryan has demonstrated "good cause" to obtain discovery of the DashCam recording.  For the following reasons, I find Bryan has not satisfied this standard.

As an initial matter, Bryan's request to obtain the DashCam recording is based on the assumption that defense counsel did not review the tape prior to trial.  Bryan, however, does not point to any specific information in the record indicating that this is necessarily the case.  Bryan does not argue the State failed to produce the DashCam recording during pre-trial discovery nor does he point to any evidence demonstrating defense counsel neglected to review the tape prior to trial. Indeed, the State introduced the tape as an Exhibit during its case-in-chief and defense counsel did not object, as  they presumably would have if they had not received and reviewed the tape.  Given

---

[9]        In *Martinez*, the Supreme Court held that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Martinez*, 132 S.Ct. at 1315.

the lack of affidavit or other evidence to the contrary, it is more likely than not that defense counsel reviewed the tape and determined that it would not be beneficial to his client to replay it before the jury.

Moreover, it is entirely speculative to assert that Detective O'Malley lied to the trial court and the jury when he represented that the video camera was inoperative and there was nothing of any value on the tape.  Bryan can point to nothing that might suggest this is the case, other than his unsupported assertion that the camera might have in fact been operative and a "specialist in video equipment" might be able to enhance whatever might be on the tape. I find these assertions to be too speculative to support a finding of "good cause" under Habeas Rule 6 and *Bracy v. Gramley*, 520 U.S. 899, 904 (1997).

Accordingly, Bryan's request for discovery of the DashCam recording and video camera is denied.

### 3. Proportionality Review (Claim 14)

In his Fourteenth Ground for Relief, Bryan claims the Ohio Supreme Court  violated his federal constitutional rights by failing to follow Ohio statutory provisions governing the proportionality review of capital sentences.  Specifically, Bryan argues that Ohio's proportionality statute, as set forth in Ohio Rev. Code § 2929.05, requires the Court to conduct a proportionality review of capital sentences in the context of the entire universe of similarly charged defendants, not just those who actually receive the death penalty.  (Doc. 18 at pp. 153-162; Doc. 63 at pp. 217-225).  To ensure reviewing courts have sufficient data with  which to conduct meaningful proportionality review, Bryan asserts the General Assembly mandated creation of an information-gathering system for capital cases. Ohio Rev. Code §§ 2929.021, 2929.03(G), 2929.05(A).  He further claims the

legislature "insisted" that prior to any individual being executed, a reviewing court must undertake a proportionality review "in the context of this defined data base." (Doc. 63 at p. 217).

Relying principally on statements by Justice Pfeifer,[10] Bryan argues the Court is failing to perform its mandated proportionality review in full compliance with its "legislative directive" because it limits its review to defendants who actually receive the death penalty. Bryan maintains "Justice Pfeifer's statements reveal the true inner workings of the Court: an absolute failure to conduct the necessary review." (Doc. 18 at p. 158). He maintains the Ohio Supreme Court's failure to conduct proportionality review in a manner consistent with policy as reflected in Ohio's proportionality statute violates his federal constitutional rights to due process and to be free from cruel and unusual punishment. (Doc. 18 at p. 155).

In his discovery motion, Bryan seeks permission to request the production of the data base gathered by the Ohio Supreme Court Clerk to "verify whether the Ohio Supreme Court complies with Legislative mandate of gathering data for the purpose of conducting proportionality review." (Doc. 67 at p. 16-17). He also seeks to permission to propound a "short set of follow-up interrogatories" to the Clerk of Court in order to clarify "whether, assuming the data base is incomplete and not consistent with the statute, these missing documents have been historically incomplete and whether there has ever been compliance with the Legislative statute." (Doc. 67 at p. 17).

Respondent argues discovery would be inappropriate on this claim because it is procedurally

---

[10] Specifically, Bryan points to a statement by Justice Pfeifer in April 2001 suggesting that Ohio's proportionality review system has been "little more than lip service." (Doc. 18 at p. 154). He also cites an open letter published in January 2011, in which Justice Pfeifer states that "the death penalty law is not being applied as we originally intended." (Doc. 18 at p. 154).

defaulted.  He further argues that, "even if Petitioner could show that possibly this claim is not procedurally defaulted," discovery is unwarranted because proportionality review is not constitutionally required and whether the Court complies with the statute is solely a matter of state law.  (Doc. 68 at p. 20).  Finally, Respondent asserts Bryan's request for discovery on this issue is purely speculative and should be denied on that basis.

Bryan argues in his Traverse that this claim is not procedurally defaulted because it was raised on direct appeal to the Ohio Supreme Court. (Doc. 63 at p. 218).  He further argues that, although proportionality review is not constitutionally required, Ohio reviewing courts must conduct their review in a constitutional manner in light of the legislative mandate that such a review occur.  Bryan also maintains the Ohio Supreme Court's failure to conduct a meaningful proportionality review in compliance with the statute violates his federal due process rights.  Finally, Bryan argues his discovery requests are not speculative because they are designed "merely to determine whether [the Ohio Supreme Court] is in compliance with the precise dictates of the Ohio death penalty statutes." (Doc. 69 at p. 5).

I note Bryan raised this issue in his direct appeal to the Ohio Supreme Court in nearly identical terms to his federal habeas proportionality claim. *See* Doc. 31 at pp. 153-159.  The Court rejected the claim summarily, noting that "In proposition of law XVIII, Bryan disputes the constitutionality of Ohio's death penalty proportionality review.  However, these claims are without merit." *State v. Bryan*, Ohio St.3d 272, 305 (2004)(citing *State v. LaMar*, 95 Ohio St.3d 181 (2002) and *State v. Steffen*, 31 Ohio St.3d 111 (1987)). Although the Ohio Supreme Court's discussion of this claim is brief, I assume for purposes of ruling on Bryan's motion that this claim was nevertheless "adjudicated on the merits" for purposes of § 2254(d).  As the Supreme Court recently

21

explained, a state court decision can constitute an "adjudication on the merits" entitled to deference under § 2254(d) even if the state court does not explicitly refer to the federal claim or to relevant federal case law. *See Harrington v. Richter*, ___ U.S. ___, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011).

Because I assume the Ohio Supreme Court's decision on this issue was on the merits, it is entitled to AEDPA deference. Thus, in order to obtain discovery on this claim, Bryan must set forth specific allegations demonstrating that, if the facts are fully developed, he can demonstrate the state court's decision on this issue was contrary to, or an unreasonable application of, clearly established federal law. *See* § 2254(d)(1).

 This he cannot do. The Supreme Court has clearly held that proportionality review is not constitutionally required. *See Pulley v. Harris*, 465 U.S. 37 (1984). Because the Constitution does note require proportionality review, "states have great latitude in defining the pool of cases used for comparison." *Buell v. Mitchell*, 274 F.3d 337, 369  (6th Cir. 2001). Indeed, the Sixth Circuit has expressly noted that "[b]y limiting proportionality review to other cases already decided by the reviewing court in which the death penalty has been imposed, Ohio has properly acted within the wide latitude it is allowed." *Id., see also Williams v. Bagley*, 380 F.3d 932, 963 (6th Cir. 2004); *Wickline v. Mitchell*, 319 F.3d 813, 824-25 (6th Cir. 2003); *Coleman v. Mitchell,* 268 F.3d 417, 453 (6th Cir. 2001). Moreover, the Sixth Circuit has expressly rejected both the Eighth Amendment and the Due Process arguments raised by Bryan in support of this claim. *See Getsy v. Mitchell*, 495 F.3d 295, 304-309 (6th Cir. 2007); *Williams*, 380 F.3d at 962-63; *Smith v. Mitchell*, 348 F.3d 177, 214, (6th Cir. 2003); *Buell*, *supra,* 274 F.3d at 368-69.

In light of the above, numerous district courts have denied discovery regarding Ohio's proportionality system on the grounds that "no amount of information calling into question the

effectiveness or the meaningfulness of Ohio's proportionality review system would assist petitioner in showing that, if the facts were more fully developed, he may be entitled to relief." *Ashworth v. Bagley*, 2001 WL 1681136 at * 8-9 (S.D. Ohio 7/26/01), *see also Gapen v. Bobby*, 2011 WL 5166566 at * 6 (S.D. Ohio 10/31/11); *McKnight v. Bobby*, 2011 WL 379185 at * 8 (S.D. Ohio 2/2/11); *Leonard v. Warden*, 2010 WL 2889102 at * 5-6 (S.D. Ohio 7/20/10); *Cowans v. Bagley*, 2002 WL 31370475 at * 15-16 (S.D. Ohio. 9/30/02).

I agree and find that Bryan has not demonstrated "good cause" to conduct discovery regarding the database of information gathered by the Ohio Supreme Court as part of Ohio's proportionality review system.  Accordingly, I deny this request for discovery.[11]

### B.  Motion to Expand the Record

In his Motion to Expand the Record, Bryan asks me to expand the habeas record to include the Declaration of Juror Edward Bross to supplement his First Claim for Relief in his Petition. Bryan's First Claim alleges that "*ex parte* communications between the trial court and Juror Bross, and the subsequent unsolicited and *sua sponte* re-questioning and death-qualifying of Juror  Bross near the end of the State's presentation of culpability phase evidence violated Bryan's due process rights to select a fair and impartial jury in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution." (Doc. 18 at 35).

Rule 7 of the Rules Governing Section 2254 Cases confers on federal courts the authority to expand the habeas record with materials relating to the petition.  Specifically, the Rule provides:

> **(a) In General**.  If the petition is not dismissed, the judge may direct the parties to expand the record by submitting additional materials relating to the

---

[11] Even if I were ultimately to review this claim *de novo*, Bryan would still not be entitled to discovery in light of the clear Supreme Court and Sixth Circuit precedent set forth above.

petition.  The judge may require that these materials be authenticated.

**(b) Types of Materials**.  The materials that may be required include letters predating the filing of the petition, documents, exhibits, and answers under oath to written interrogatories propounded by the judge.  Affidavits may also be submitted and considered as part of the record.

**(c) Review by the Opposing Party**.  The judge must give the party against whom the additional materials are offered an opportunity to admit or deny their correctness.

Rules Governing § 2254 Cases, Rule 7.

According to the Advisory Committee Notes, the purpose of Habeas  Rule 7 is not only to enable district courts to dispose of petitions not dismissed on the pleadings without the time and expense of an evidentiary hearing, but also to assist district courts in determining whether an evidentiary hearing is warranted.  *See* Advisory Committee Notes to Habeas Rule 7.  The decision whether to grant an expansion of the record under Rule 7 lies within the district court's sound discretion.  *See Ford v. Seabold*, 841 F.2d 677, 691 (6th Cir. 1988).

While district courts have latitude to expand the record under Rule 7, the Supreme Court explained in *Holland v. Jackson*, 542 U.S. 649 (2004), that restrictions set forth in 28 U.S.C. § 2254(e)(2) "apply *a fortiori* when a prisoner seeks relief based on new evidence *without* an evidentiary hearing." *Id.* at 653 (emphasis in original).  Since *Holland*, federal courts have routinely applied § 2254(e)(2) standards to motions to expand the record. *E.g. Landrum v. Mitchell*, 625 F.3d 905, 924 (6th Cir. 2010); *Hill v. Anderson*, 2010 WL 5178699 at * 6-7 (N.D. Ohio 12/14/10); *Lynch v. Hudson*, 2010 WL 2076925 at * 3 (S.D. Ohio 5/24/10); *Pruitt v. Welsh*, 2010 WL 3260059 at *4 (N.D. Ohio 8/18/10).

Under this standard, new evidence can come into a habeas record only if the petitioner was not at fault in failing to develop that evidence in state court, or if he was at fault, he meets the

24

conditions prescribed by § 2254(e)(2).  *See Williams v. Taylor*, 529 U.S. 420, 431-37 (2000); *James v. Brigano*, 470 F.3d 636, 642 (6ᵗʰ Cir. 2006). "A prisoner is at fault in failing to develop the evidence if there is a 'lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel.' The required diligence is 'a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court.'" *Landrum*, *suupra,* 625 F.3d at 924 (quoting *Williams*, *supra,* 529 U.S. at 432, 435 (2000)).

In his First Claim for Relief, Bryan argues the trial court violated his constitutional rights when it: 1) engaged in *ex parte* communications with Juror Bross regarding Bross's concerns about appearing in a newspaper photograph regarding the case; and 2) *sua sponte* conducted a hearing to determine whether Bross was still "death qualified" to sit on the jury.  (Doc. 18 at pp. 35- 57).

The Ohio Supreme Court set forth the facts relating to this claim:

In proposition of law I, Bryan argues that the trial court improperly excused juror Bross after the jury had been impaneled.  Bryan also contends that the trial judge had improper *ex parte* communications with Bross prior to excusing him.

The record reveals that, on October 30, 2000, Bross expressed concern to the court bailiff that his photograph had appeared in the Cleveland Plain Dealer. The trial judge briefly talked to Bross and "told him not to mention it to any fellow jurors, that [the judge] would look into the matter and discuss it with him sometime later."  Thereafter, the trial judge obtained a copy of the photograph, informed counsel for both sides of the juror's concern, and said that they would address the issue later. [footnote omitted]

On October 31, the trial judge spoke to Bross, who expressed reservations about continuing as a juror.  On November 1, the trial judge and counsel conducted a hearing about Bross's concerns.  During questioning, Bross stated, "The concern * * * is that people may recognize me wherever, at home, at work, on the street or supermarket or other places from that picture [and] it might affect what I have to do as a juror."  During ensuing questions, the trial judge told Bross, "I've looked at you for eight days.  I wouldn't be able to identify you from this photograph."  Bross asserted that the news photograph would not affect his ability to decide guilt or innocence.

However, when asked about deliberating on the death penalty, Bross said, "I'm just thinking that somehow that can be put on me."

Following Bross' responses, the trial court stated, "I'm just thinking that this * * * photograph is not the issue.  I'm beginning to think that the issue is * * * the possible imposition of capital punishment in this case."  When asked if he could sign a death penalty verdict, Bross said "No" and mentioned that his death penalty views had "evolved" since the trial began.  The trial court and Bross then had the following discussion:

Q:     This photograph is not– I don't want to call it a false issue.  It's an issue. It's a concern of yours.

A:     Yes.


Q:     But bottom line is, when we were in the courtroom last week during individual voir dire, your response to the question about whether or not you could sign a death warrant was yeah, * * * you could follow the law?

A:     Yes.

Q:     Today is it no, you could not, is that correct?

A:     That is correct.

Q:     * * * In part that's due to the photograph, but in part it's due to the * * * fact that the photograph triggered you to do some additional thinking; is that fair to say?

A:     Yes.

Over defense objection, the trial judge excused Bross and replaced him with an alternate juror.

*Bryan*, *supra,* 101 Ohio St.3d at 283.

After setting forth the applicable law, the Court determined the trial court did not abuse its

discretion in excusing Bross during trial.  *Id.* at 284.  It then rejected Bryan's argument that the trial

court committed prejudicial error when it engaged in *ex parte* communications with Bross, finding

26

such communications did not rise to the level of plain error  because "the trial judge's discussions with Bross were very brief, and once the trial judge became aware of Bross's concerns, a hearing with both counsel was conducted. Thus, the lack of prejudice is manifest." *Id*.

Bryan now seeks to expand the record to include the "Declaration of Edward Bross," dated June 26, 2012. (Doc. No. 64-1).  In his Declaration, Mr. Bross explains the circumstances and concerns which led him to contact the trial court, and relays the content of his *ex parte* communications with the trial court judge.

Specifically, Mr. Bross asserts that during their *ex parte* conversation "Judge Gaul . . . told me 'it's not the picture, it's the death penalty that's bothering you'" and he "made this remark three to four times, and each time I responded, 'no my concern is the picture in the paper.'"  (Doc. No. 64-1 at ¶¶ 12, 13).  He further avers he "felt the Judge was trying to engage me in a discussion that I did not want to engage in without witnesses" and he "thought and felt someone else should have been present while I engaged in conversation with Judge Gaul." (Doc. No. 64-1 at ¶¶ 16, 19).  Mr. Bross further claims that, at one point, Judge Gaul stated "if all people were like you, we would all be speaking German" and this made Mr. Bross angry because he "felt the Judge was being intimidating and implying that I was some kind of a Nazi." (Doc. No. 64-1 at ¶ 21).  Finally, Mr. Bross states he was confused during the November 1, 2000 hearing on this issue and "wasn't sure how Judge Gaul wanted me to answer his questions." (Doc. No. 64-1 at ¶¶ 22, 24).

Bryan argues I should expand the record to include the Declaration of Juror Bross because it supports his argument that "there was no factual basis to inform the trial judge's discretion or warrant the trial judge, after several days of testimony, to *sua sponte* re-visit and conduct a subsequent new death-qualification of the seated juror." (Doc. 64 at 8).  Bryan further argues that

Mr. Bross's Declaration merely supplements and/or clarifies an existing claim and, therefore, this Court should find he has already satisfied the due diligence requirement of § 2254(e)(2). (Doc. 64 at 7-8). Finally, Bryan argues summarily that "[b]ecause [he] presented the substance of this claim to the state court, the inclusion of the declaration will pose no issues under *Cullen v. Pinholster*, — U.S. —, 131 S.Ct. 1388 (2011)." (Doc. 64 at 9, fn. 2).

Respondent did not file a Brief in Opposition to Bryan's Motion to Expand the Record. Thus, Bryan's motion is unopposed.

As an initial matter, I note Bryan raised the precise issues alleged in his First Claim for Relief on direct appeal to the Ohio Supreme Court. Respondent does not argue in his Return that this claim is either unexhausted or procedurally defaulted. (Doc. 59 at pp. 40 - 50). Thus, this Court assumes for purposes of the instant Motion that Bryan's First Claim for Relief was "adjudicated on the merits" for purposes of § 2254(d). As such, the limitations imposed by *Pinholster* are applicable to the instant claim and this Court is restricted in its review to the record that was before the Ohio Supreme Court on direct appeal.

Mr. Bross' Declaration was clearly not part of the state court record. It is dated June 26, 2012 and appears to be the product of a May 2012, interview with Bryan's habeas counsel. As set forth *supra*, the Sixth Circuit has repeatedly relied on *Pinholster* to refuse to expand the habeas record to include materials that were not part of the state court record when considering claims that have been "adjudicated on the merits." *See Strouth*, *supra,* 680 F.3d at 603 (6th Cir. 2012) (relying on *Pinholster* to find petitioner was not permitted to expand the record to include new evidence of mental illness); *Amos v. Renico*, 683 F.3d 720, 728 fn. 3 (6th Cir. 2012) (denying motion to supplement the record on appeal to include information that was not before the state courts or district

28

court because "review under § 2254(d) is limited to the record that was before the state court that adjudicated the claim" under *Pinholster*).

I will not expand the record to include the Declaration of Edward Bross at this time. However, if I decide, based solely on the state court record, that the state court decision regarding Bryan's First Claim for Relief contravenes or unreasonably applies clearly established federal law or involves an unreasonable determination of facts pursuant to § 2254(d)(1) or (2), I may then revisit whether expansion is necessary to determine whether federal habeas relief should be granted. I have not yet made this threshold determination under § 2254(d)(1) and/or (2), however, and I am not inclined to do so in the context of deciding the instant motion. Should I ultimately determine that § 2254(d)(1) and/or (2) are satisfied based solely on the state court record, I will then consider whether to expand the record. Accordingly, Bryan's Motion to Expand the Record is denied without prejudice at this time.

## Conclusion

Accordingly, and for the reasons set forth above, it is hereby

ORDERED THAT

1.      Petitioner Bryan's Motion to Expand the Record (Doc. 64) be, and the same hereby is denied without prejudice; and

2.      Petitioner Bryan's Motion for Discovery (Doc. 67) is denied without prejudice with respect to Claim 8 and denied with prejudice with respect to Claims 9 and 14.

So ordered

/s/ James G. Carr
Sr. U.S. District Judge

29